Number 171971 and number 171972, Banco Popular de Puerto Rico et al. and Edgar A. v. Edgar A. Reyes-Colon. Good morning, Chief Judge, Judge Thompson, Judge Payada, Michael Fenser for Dr. Edgar Reyes, the appellant. Your Honor, as I'd like to reserve two minutes for rebuttal, if I can. Yes. Four points I'd like to touch upon in this hearing, Your Honor. There's some equitable considerations that I'm going to discuss for that require a dismissal of this case, affirming the Bankruptcy Court's decision on that issue. I'm sorry, on the dismissal, that the Bankruptcy Court correctly reached the... I'm sorry, Counselor, maybe you could start by explaining to us why you didn't brief the creditor issue and incorporated the Bankruptcy Court's decision. Your Honor, the... Is there some case law that allows you to do that that I'm unaware of? No, the creditor issue was briefed, Your Honor, that the Bankruptcy Court correctly found that there were 15 creditors. Is that the point that you're inquiring about? Well, you incorporated the Bankruptcy Court's decision into your brief. Yes. In the addendum. I didn't see very much briefing on that issue, though. On the inclusion of the decision in the brief? No, not the inclusion of the decision. Argument. Well, Your Honor, I think that the reply brief in particular spent a fair amount of time with the argument that the Bankruptcy Court got the number, satisfied the numerosity requirement of 303B1. It spoke to the four petitioners really only take issue with four. We sort of got an odd procedural thing here. You went... You were in the Bankruptcy Court. You then went to the District Court. Yes. You lost at the District Court and now have appealed here, but under our rules, we don't review the District Court decision. That's correct. We review the Bankruptcy Court decision. Yes. You won in the Bankruptcy Court decision. You're completely happy with it and have nothing to say about it other than that it's right. That's correct. And yet you're standing up here as an appellant. Because the District Court reversed the Bankruptcy Court's order. So it's an odd, odd scenario. It is, Your Honor, but under the Fustolo decision and many others, this court is sitting in plenary review of what the Bankruptcy Court did as though the District Court appeal never occurred. But that doesn't really answer the question of your burden. Right? You're appealing from an adverse judgment. That's correct. Yes. And essentially, Your Honor, the appeal, the gravamen in the appeal is that the District Court got it wrong and the Bankruptcy Court got it right. So this court, in an overall review of the Bankruptcy Court's decision, can consider what the Bankruptcy Court had before it and what the Bankruptcy Court's findings of fact were in the context of its summary judgment decision and then its legal decision on the Law v. Siegel issue and on its conclusions of law in both of those areas. As I said, there are really only four creditors that are at issue here. The Bankruptcy Court correctly found that there were 15 creditors on the date that this involuntary case was filed on November 22, 2006. The petitioners only take issue with four. And below, in the exception of Miami-Dade County. And here today, in their briefing to this court, they've even backed away from that. The sole attack on these four creditors for the purposes of deciding the numerosity requirement of 303B1 is that the petitioners contend that these creditors got either preferential transfers under 547B or post-petition transfers under 549A that make them avoidable and therefore disqualifies them as creditors. Respectfully, Your Honor, the Bankruptcy Court got it correct. Starting with Bank of America, and even if the court disagrees with the legal conclusion that the petitioners take issue with, which was the Bankruptcy Court's holding that because the creditors didn't get full payment in their preference or post-petition payments, that the preferences in the post-petition payments didn't disqualify them, there's information in the record that would allow this court to affirm the Bankruptcy Court for different reasons. In particular, I want to point out that the challenge to the Bank of America claim is that it got a $1,500 payment before the petition date, which would be avoidable as a preference. That transfer would be per 547C9 because the Bankruptcy Court only authorizes the avoidance of transfers of $5,000 or more. Did you present this argument even by hint to the District Court? I don't believe it was presented to the District Court, Your Honor, but it was presented in the Bankruptcy Court, which is the record that this court is sitting and reviewing. When they went to the District Court, I didn't see anything in your argument to the District Court that the Bankruptcy Court was right as to the number of creditors. You seem to go off on other issues. I think that that's correct, Your Honor, but that would have been assuming a burden that the alleged debtor didn't have. Recall when we went to the District Court, we had one in the Bankruptcy Court. The burden has always been on the petitioning creditors to show that there were fewer than 12 creditors. In the Bankruptcy Court, they failed to sustain that burden. But you didn't even argue that burden point, did you, to the District Court that any absence of evidence regarding the 15 should be down to your benefit, not the other, as long as you put them in a list? That's correct, Your Honor. The list under Rule 1003 that you're referring to satisfied the debtor's initial prima facie burden of showing the existence of greater than 12 creditors. The petitioning creditors have appeared to have conflated the burden issue of summary judgment under Rule 56 and the burdens of proof. We have to keep in mind that the burdens of proof in bankruptcy is satisfied in this context by the debtor presenting that list under 1003, shifting the burden of proof to the petitioning creditors. The burdens that exist under Rule 56, which is how we got here from the Bankruptcy Court, was that it was incumbent upon the debtor to show facts that were not disputed, and it was incumbent upon the petitioning creditors to show the existence of disputable facts. It's a scorekeeping function. It's not, as we all know, the District Court and the Bankruptcy Court, they don't decide facts. They don't decide credibility. They simply, they act, they function as a gatekeeper. Is there enough evidence here that would justify the entry of relief? And has the other side come forward and presented sufficient facts to create a triable issue? Could you help me on how this case, I'm having a great deal, we're standing here and the issue is, are these four creditors legitimate or not? That's correct. It's 11 years of litigation, as I understand it. Why, I would think this is an easily determinable fact, you go to pose to four creditors and look at their records and then they are or they aren't. I totally agree. Why aren't we at that point like nine years ago? I totally agree with you, Your Honor, and you're skipping ahead to where I intended to close, but the procedural rule that governs these is Rule 1013 of the bankruptcy rules and it speaks to that issue and it's very clear. It says that the court shall determine issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order. This case has been a litigation tactic. It is the alleged debtor's position that this was a two-party dispute from the beginning and this was the purpose of submitting the Second Circuit's decision in Murray in my Rule 28 letter of last week. This has been a two-party dispute all along. The docket of this case reflects that there is 800 entries or so of discovery squabbling about this petition between two parties. It's a three if you count Otto, but it's an affiliate of the bank. Your Honor, this is an example of the involuntary bankruptcy process being used in an abusive fashion. You yourself, Your Honor, Judge Kayyad, I wrote two or three or four paragraphs in the Fustola decision about how an involuntary bankruptcy case can be used as an abusive tactic. Candidly, Your Honor, this is a case that because no other creditors have joined in 12 years, in two weeks this will be the 12-year anniversary of this case, and no other creditors have joined in this case despite having not noticed and the opportunity to do so. This is a case that should be dismissed because it did not result in a prompt adjudication. Dr. Reyes has had this bankruptcy case hanging over his head for 12 years. It has influenced his perception in the small community of Puerto Rico. It has had influences on his ability to obtain credit and generally his standing in public and his business reputation, and I agree entirely that this is an instance where not enough control was exercised over the docket, but it should have been adjudicated in six months or certainly in under a year, and here we are 12 years later with the only parties that are seeking the entry of an order for relief are the petitioning creditors, and there's only two of them. Your Honor, if I could turn back to the creditors, I think it's important that we touch upon this because they're, and I'd like to speak to Miami-Dade County in particular, and it's important to note that the alleged debtor only needs to prevail in this Court's view on one of these creditors. They have to prevail on all four challenge creditors. If we prevail on at least one, then there is the requisite number of creditors and it requires compliance with 303B1. Miami-Dade County in particular is important because the Bankruptcy Court correctly informed itself about the application of Florida law, both as the assessment and accrual of a claim for real estate taxes, and when the timing of a lien arises. The Bankruptcy Court correctly informed itself about the fact that under 549A secured creditors by definition cannot receive an avoidable preference because they would receive what they would otherwise get in a liquidation. It's also important to point out that Miami-Dade County was, the only evidence of that is an unnegotiated check. There's a copy of a check in the record, I believe it is in the appendix at page 349. The Barnhill decision by the Supreme Court teaches us that a transfer under the Bankruptcy Code does not occur until it's been honored by the Bank, and there's no evidence in the record that that check was ever presented to the Bank or honored, so we don't know whether it was honored and whether a transfer occurred and when. So, based on that, Your Honor, Miami-Dade County did not receive an avoidable preference and it would be a qualifying creditor. I'd like to turn our attention to, for the last minute and a half that I have, Your Honor, to the legal issue about whether or not the Law v. Siegel decision of the Supreme Court extinguished this special circumstances exception that the petitioning creditors rely upon, even in the event that there are 15 creditors or 12 or more. In Law v. Siegel, the Supreme Court in 2014, in the context of bankruptcy property exemptions, where a trustee was surcharging that exempt property, the Court specifically held it where a court exercises its equitable power or its inherent authority to contravene the express terms of a statute, that that's an excess of that authority and that it can't stand. Two years later, the Court decided JEVAC, and I've submitted that pursuant to a Rule 28 letter. JEVAC was a slightly different context. The Court was looking at the structured dismissal of a Chapter 11 bankruptcy plan that provided for distributions that did not comport with Section 507. Relying specifically on Siegel, the Court said that it could not, even in a rare case, allow a bankruptcy court to exercise equitable power or inherent authority to exceed or contravene express statutes. This Court's jurisprudence, for as long as I've read it, on bankruptcy court equitable authority has always been that it is not a roving writ, and that is what the petitioning creditors advocate today. Thank you. Good morning. May it please the Court, Roberto Abesagüe, on behalf of Banco Popular de Puerto Rico. I would like to start by clarifying to the Court that the issue on appeal is not about only four creditors. What has been submitted on the briefs is that the District Court correctly held on the NOVA review that there were less than 12 eligible creditors under Section 303B2. So that, therefore, encompasses not only the creditors that received voidable transfers that Reyes Counsel just mentioned, but other creditors that there was no admissible evidence to support those creditors. The District, the Bankruptcy Court used untranslated documents to address the unadmissible expert report that was not verified, and which expert report, in turn, used unverified documents. And that argument was specifically made in the Bankruptcy Court. Dr. Reyes never opposed that argument. He neither opposed that argument made in the District Court level. And Dr. Reyes never made mention in his marriage brief about the untranslated documents, the unverified documents the expert used, and that his expert report was simply unreliable. Could you help us out with the procedure? The way I understand this issue in normal course is to proceed in Bankruptcy Court is that when fewer than three creditors come in and put someone into bankruptcy, the debtor posts a list of his creditors, those who are on it, you're good to go. You don't need a third. But if that list has more than it's on it, it seems to me, as I understand it, the burden then shifts to the party who initiated the involuntary bankruptcy proceeding to show that there are enough on that list who do not qualify as to get the number down under 12. And so you go and you talk to those creditors. If they won't talk to you, you initiated the bankruptcy proceeding to show there are fewer than 12, the debtor doesn't need to do anything other than post the list. That's the way I understood this work. They don't need an expert report, although here they used one to actually limit the list and make your task earlier, easier. Is my understanding about how this process is supposed to work incorrect? That is the general rule, Judge Cayata. But here, I think it's very important to look at the detail of the procedural events that transpire in bankruptcy court. First of all, when we look at the motion to dismiss at docket number 6 from Dr. Edgar Reyes, he alleged under penalty of perjury that he had 20 creditors. Then in docket number 10, he proffered rule 10-03-B list with 58 creditors. He then presented an expert report in support of the motion for summary judgment that only relied on 22 creditors. And that motion for summary judgment never made mention of the rule 10-03-B list. In fact, the expert never used that list. So when we go to the March 29, 2011 hearing... Wasn't every one of the 24 but save one on the list? Except one, which I think it was Hacienda was not on the list. Right. So it seems to me that it's odd that the debtor didn't need to do that, but the debtor did it and eased your task by knocking things down to 24. In other words, we could agree with you that by that filing, which he did not have to make under normal procedures, he waived his right to anyone other than those 24. But how does he have waived his right as to who the burden of proof is on? Because specifically, Judge Cayetano, if we look at docket 337, this dispute on the March 29, 2011 hearing came up because there was a contradiction between now this new 22 creditor list and the 58 creditor list, and the banks needed to be sure what discovery they were going to perform, either the 58 creditors or the 22 creditors. And that is why Judge Lamothe ordered that day to Dr. Reyes to file in 10 days a new Rule 10-03-B list. And rather than filing the new list, he filed a motion for reconsideration at docket 345, which you will find in the appendix, page 288. And that motion was then discussed in the April 29, 2011 hearing that you will find in docket 356, specifically the military and appendix 300 and the transcript you will find in docket 358. And at page 16 of the transcript, Judge Lamothe specifically asked Dr. Reyes' counsel. And Dr. Reyes was there at that hearing because I was there at that hearing with my co-counsel. He specifically asked, you need to say which, what are you going to use? Are you going to file a new list? Are you going to use the old list? Or are you going to rely on the expert report? And the answer that Dr. Reyes' counsel gave was, we will use the ones listed in the expert witness, the motion for summary judgment in the expert witness report, which refers to the original 58 creditors. But when we look at the expert report and Exhibit A that has all the data the expert used, he doesn't rely on the Rule 1003B list. In fact, Judge Cayata, when we look at the motion for summary judgment, that list is not relied on. When we look at the reply brief of Dr. Reyes in support of the motion for summary judgment, he doesn't use that list neither. That's why the bankruptcy court, in its summary judgment order, specifically makes reference in page 36 of the addendum that Dr. Reyes stipulated to the use of 22 creditors. And that is why also in page 41 of the addendum, the reason why the court shifted the burden of proof to the banks was not because of the Rule 1003B list. It was because Dr. Reyes had allegedly submitted documentary evidence in support of his motion for summary judgment. And it's important to take note that Dr. Reyes, in his motion for summary judgment, at the appendix, pages 149 to 151, he admitted that he had the initial burden to establish which were the material facts not in dispute. And through all the proceedings, Dr. Reyes remained silent on the Rule 1003B issue. What was the citation in which you say he admitted that he had the burden? In his motion for summary judgment at Docker 331, pages of the appendix 149 to 151, he admitted that he had the initial burden to establish the facts that are not in dispute. And he never made reference to the Rule 1003B list. Rather, he said, I have these documents that show with my expert report that I have more than 12 creditors. In fact, if we look at paragraph 16 of the Statement of Uncontested Material Facts, the only fact that Dr. Reyes conveys in support of the creditor eligibility issue is one sentence that says I have more than 12 creditors. And the only thing he cites in support of that statement, which I think is a conclusion of law, it's not a fact, is his expert report at page 4. And when we go to the expert report at page 156 of the appendix, the expert only concludes without any explanation that Dr. Reyes has more than 12 creditors. And he relies on a list that the expert prepared that makes reference to an exhibit D as in dog. And there's no exhibit D attached to the expert report. So I think it's important to understand that throughout the proceeding, the way Dr. Reyes submitted his motion for summary judgment was that I have the evidence, and here it is, to show that I have more than 12 creditors. And what Judge Lamothe then did, when we look at his 80-page opinion on order, he never cited Rule 56. He never applied the Rule 56 standard. He only talked about burden of proof as this had been presented in an evidentiary hearing. And the reason why he shifted the burden of proof to the banks was because Dr. Reyes only presented documents as documentary evidence. But when we go to the documentary evidence, for example, there's no evidence presented by Dr. Reyes to establish that Suncom, Liberty Cable, and Dorado Homeowners Association were creditors. When you say the court shifted the burden of proof to you, as I understand it, the burden of proof was on you once the list was filed. And I think what I hear you saying is the other party, the doctor, assumed the burden by filing papers that acted as if he had the burden. Our reading of the record, Judge Caliata, is that Dr. Reyes, in the April 29, 2011 hearing, after looking for Dr. Reyes' permission, he was in court, they withdrew that list. And they decided to use the expert report in support of the motion for summary judgment. And that is why you will see that even in their reply brief, they don't make mention to that list. They only make mention to the expert report. So that is why the bankruptcy court did not shift the burden because of the Rule 1003 B list. It shifted the burden because Dr. Reyes had presented documents in support of his motion for summary judgment, and Dr. Reyes admitted that he had the initial burden. But don't we want to encourage parties to pare down their list if they file a list at the beginning of bankruptcy that is overly long, and then they decide these 10 people aren't creditors, isn't it good to have them reduce the list? Correct, Judge Caliata. And Judge Lamut gave that opportunity to Dr. Reyes in the April 29, 2011 hearing. And when you go to the transcript, Judge Lamut asked Dr. Reyes, why don't you file an amended list? We, in that hearing, even told the court, let them file an amended list, and we waive the right for that list to be under penalty of burglary because Dr. Reyes had been making contradictory statements regarding the number of creditors. But at the end of the day... I'm still not understanding, if they filed a list of creditors, why are you thinking that you somehow did not have the burden of showing that those were invalid creditors? Because ultimately, Judge Thompson, Dr. Reyes, in that hearing, withdrew that list that appears in Docket 356. But if you only use the expert report, which lists creditors, your argument is that it may not have all of the documentation supporting the list, but it is a list. Correct, and it was a list prepared by the expert, which was unverified, and it was not supported by any documents that were either admissible... It was a list that you could have used to subpoena in those creditors, or taken the deposition of those creditors, to see if they were valid, because that burden was on you at that point. There was at least an identifiable list of creditors, and the burden would have shifted if that list would have been maintained for purposes of a hearing. But once the involuntary debtor decided to file a motion for summary judgment, he had the burden of establishing what are the material facts not in dispute, and he used an expert report that was unverified, that had no scientific data to support his contentions, and the expert used documents in Spanish. If you look at the record, Eurobank, the vehicle agreement, license agreement, lease agreement, it's in Spanish. Banco Santander, the lease agreement, it's in Spanish. PRTC documents, they're in Spanish. Citibank, they're in Spanish. Why were you not satisfied with the State Court proceedings? The involuntary bankruptcy, Your Honor, was filed, and according to, I'm going to answer your question based on the evidence presented. You only have a minute and a half, so make it succinct. Why weren't you satisfied, the bank satisfied with the State Court proceedings? Because we had obtained knowledge that Dr. Reyes had been fraudulently transferring assets outside of Puerto Rico, and the testimony of Amalia Delgado on trial in her cross-examination was that this was not filed as a collection device, but rather to avoid the fraudulent transfer of assets outside of Puerto Rico. Why did those civil codes not have fraudulent transfer proceedings available to it? It has a procedure that you may file, a fraud to predator's claim, but the problem here is when you have assets transferred to other jurisdictions. That you will need to finish the State Court proceedings, get a final judgment, and then try to validate that judgment in those jurisdictions where the fraudulent transfers were done. So, one of the purposes of the involuntary bankruptcy proceedings is precisely to avoid fraudulent transfers, and that goes back even to the Bankruptcy Code of 1898, which allowed, as one of the six reasons, may I finish this? Yes. One of the reasons why involuntary bankruptcies exist since the 1898 Code is precisely to avoid an involuntary debtor from fraudulently transferring assets. That's one of the six reasons of bankruptcy that the Code accepted, and then it just made the life easier through time by putting the debtors out. Just a few points, Your Honors. First, I want to point out that it's not a correct statement that the Rule 1003 statement was withdrawn. It is true that the number of creditors from the standpoint of the alleged debtors perspective was changed as he filed. He whittled it down. There is some confusion on the docket about the Court's expectation of the need for a new list. But the fact remains that the burden of proof was shifted to the petitioning creditors. Well, stay with that because that's not good. The argument I just heard is that you did stuff that made it appear you were withdrawing the list. The bankruptcy court so informed you that it interpreted this as withdrawing the list, invited you to file a new list. The other side invited you to file a new list, and then you never filed any verified list from that point forward. Instead, you moved for summary judgment based on an expert's submission. Is that correct chronologically? I believe it is correct chronologically, Your Honor. So then if you don't have a list, you're kind of hanging out there. The point that I disagree with you on is that statement, is that we don't have a list. Is it correct, what we just heard from counsel for the bank, that the bankruptcy court informed the parties that it appeared to the bankruptcy court that the list had been withdrawn and then invited the submission of a new list? I was not there, Your Honor, so I can't speak to that. But would you agree that if that happened, then you're hanging out there without a list? No, because I disagree, Your Honor, respectfully. One, because the court did not strike the prior list from the docket, and there's not an order on the docket withdrawing that particular pleading. And it was further ratified or reaffirmed by the expert's report that had 22 creditors, all of which, with the exception of the bank, appeared on the first 1003 list. The fact remains, Your Honor, I'm sorry. No, that's all right. Finish up. Yeah, the fact remains is that the initial pleading to shift the burden of proof found its way onto the docket. It was modified through the expert report as filed by summary judgment. And what I heard the bank argue here today was, again, a confused conflation of the burden of proof in the context of a contested 303 proceeding and burdens in the Rule 56 environment. Rule 56 is not an assumption of the burden of proof simply because you're the moving party. Defendants routinely move for summary judgment to dispose of a case that the plaintiff has weak evidence on. It's a very common vehicle, and that's what I liken it to here. But that's not what you argued in your summary judgment motion. Well, you didn't file a summary judgment motion saying the burden is on them and they've got no evidence. Instead, you filed a summary judgment motion saying, here's my expert report, and that proves we're right. Well, here's the list of what we consider to be the undisputed list of creditors, and it was the burden on them to disqualify them under substantive law. All right. Thank you both.